IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MADHU AGARWAL and                          :
DR. ANIL AGARWAL,                          :        CIVIL ACTION NO. **3:CV-09-1921**
                                           :
            Plaintiffs                     :        (Judge Caputo)
                                           :
            v.                             :        (Magistrate Judge Blewitt)
                                           :
SCHUYLKILL COUNTY TAX CLAIM                :
BUREAU, et al.,                            :
                                           :
                                           :
            Defendants                     :

## REPORT AND RECOMMENDATION

### I. Background.

On October 6, 2009, Plaintiffs, Madhu Agarwal and Anil Agarwal, currently residents of Maywood, New Jersey, and Kelayres, Pennsylvania, respectively, filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983.[1]   Plaintiffs asserted four claims (Parts One to Four) for violations of their U.S. Constitutional rights and also for violations of their rights under the Pennsylvania Constitution.  Plaintiffs named 26 Defendants in their original Complaint along with Jane Doe and John Doe Defendants numbers 27 to 51.   (Doc. 1, p. 1).  Plaintiffs paid the full filing fee.

After the named Defendants (except for Defendant #6 Pamela) were served with Plaintiffs' original Complaint, all Defendants, except for Defendant #18 Hazleton City Authority Water Department ("HCAWD"),  joined in one of several motions to dismiss.  (Docs. 15, 17, 22, 24, 25,

_____

[1]Plaintiffs' *pro se* original Complaint consisted of nine (9) typed, single spaced  pages with no numbered paragraphs and it had attached exhibits.  (Docs. 1 & 1-2 to 1-5).

34, 45, and 46).  Defendant HCAWD filed an Answer to the original Complaint.  (Doc. 41).

On November 30, 2009, Plaintiffs filed a Motion to Amend their Complaint.  (Doc. 42).

On December 11, 2009, the Court issued the following Order:

1.  Plaintiffs' November 30, 2009 Motion to Amend their Complaint **(Doc. 42)** is **GRANTED** pursuant to Fed.R.Civ.P. 15(a).[2]

2.  Plaintiffs shall file and serve their Amended Complaint within **seven (7) days** of the date of this Order.[3]

3.  The Clerk of Court is directed to re-issue Summons and provide same to Plaintiffs for service upon Defendants.

4.  The following Motions to Dismiss Plaintiffs' original Complaint, filed by various Defendants, are rendered **MOOT** by virtue of this Order:[4]

| | |
|---|---|
| **Doc. 15** | Motion of Defendant Paul Datte, Esquire, to Dismiss Plaintiffs' Complaint; |
| **Doc. 17** | Motion of Defendant Hazleton City Authority Water Department to Dismiss Plaintiffs' Complaint; |
| **Doc. 22** | Motion of Defendant Commonwealth of Pennsylvania to Dismiss Plaintiffs' Complaint; |

---

[2]Plaintiffs were required to file a Motion to Amend their Complaint under Rule 15(a) at this stage of the case since they were served with responsive pleadings by some Defendants. However, the Motions to Dismiss filed by other Defendants are not responsive pleadings.  *See Centifanti v. Nix*, 865 F.2d 1422, 1431, n. 9 (3d Cir. 1989).

Further, leave to amend should be granted liberally.  *Egnotovich v. Greenfield Tp. Sewer Auth.*, 2006 WL 559459, * 1 (M.D. Pa.).

[3]Plaintiffs' proposed Amended Complaint was attached to Doc. 42.

[4]*See Egnotovich v. Greenfield Tp. Sewer Auth.*, 2006 WL 559459 (M.D. Pa.) (In light of Court's order granting Plaintiff's Motion to Amend Complaint, Defendants' Motions to Dismiss Plaintiff's original Complaint were denied without prejudice as moot).

**Doc. 25**     Motion of Defendant Pennsylvania Tax Collection, Inc.,
                to Dismiss Plaintiffs' Complaint;

**Doc. 34**     Motion of Defendants Robert S. Frycklund, Mantura M.
                Gallagher, Denise McGinley-Gerchak, Shelly K. Morrison,
                Russell T. Motsko, and Schuylkill County Tax Claim
                Bureau to Dismiss Plaintiffs' Complaint;

**Doc. 45**     Motion of Defendants Hazel Township Supervisors and
                Hazel Township through Supervisors to Dismiss
                Plaintiffs' Complaint;

**Doc. 46**     Motion of Defendants Kline Township Municipal Authority
                and Francis Patton to Dismiss Plaintiffs' Complaint.

5.  Defendants are directed to file their responses to Plaintiffs' Amended Complaint within **fourteen (14) days** after they are served with it.[5]

(Doc. 48).

On December 14, 2009, Defendant Hazleton Area School District ("HASD") filed a motion to dismiss Plaintiffs' original Complaint.  (Doc. 50).

Plaintiffs filed their Amended Complaint on December 22, 2009.  (Doc. 53).  Plaintiffs' *pro se* Amended Complaint consists  of eleven (11) typed, single spaced  pages with 150 numbered paragraphs and it has numerous attached exhibits.  (Docs. 53 and Exs. 1A to 6E).  Plaintiffs also submitted additional exhibits to support their amended pleading.  (Docs. 87, 98, 107 & 120).  Plaintiffs name the following 51 Defendants in their amended pleading:

1.      Schuylkill County Tax Claim Bureau

2.      Mantura M. Gallagher

---

[5]If Plaintiffs' claims are the same in both of their pleadings against any of the Defendants stated in ¶ 3. above, this Defendant can simply re-file the Motion to Dismiss as to Plaintiffs' Amended Complaint.

3.      Robert S. Frycklund

4.      Shelly K. Morrison

5.      Russell T. Motsko

6.      Pamela

7.      Denise McGinley-Gerchak

8.      Pennsylvania Tax Collection, Inc.

9.      Hazleton Area School District

10.     Mid County Resources, LLC

11.     Kline Township, Through Supervisors

12.     Kline Township Supervisors

13.     Francis Patton, KTMA

14.     Kline Township Municipal Authority

15.     Paul Datte, Esq.

16.     Kline Township Police

17.     State of Pennsylvania through Attorney General

18.     Hazleton City Authority Water Department

19.     Hazel Township through Supervisors

20.     Hazel Township Supervisors

21.     John Doe #21, Schuylkill County Sheriff Department

22.     John Doe #22, Schuylkill County Sheriff Department

23.     John Doe #23, Schuylkill County Sheriff Department

24.     Schuylkill County Sheriff Department

25.     Schuylkill County Prothonotary Officer

26.     Court Administrator's Office, Schuylkill County

27. to 51.  Jane Doe or John Doe.

On December 23, 2009, the Court issued an Order stating that Plaintiffs' Amended Complaint rendered Defendant HASD's Doc. 50 Motion to Dismiss the original Complaint as moot. (Doc. 54).

After Plaintiffs' Amended Complaint was served, the following eleven (11) Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) were filed:

| Doc. 55 | December 23, 2009 | Motion of Defendant Paul Datte, Esquire, to Dismiss Plaintiffs' Amended Complaint |
| --- | --- | --- |
| Doc. 56 | December 23, 2009 | Motion of Defendants Schuylkill County Tax Claim Bureau, Mantura M. Gallagher, Robert S. Frycklund, Shelly K. Morrison, Russell T. Motsko, and Denise McGinley-Gerchak to Dismiss Plaintiffs' Amended Complaint |
| Doc. 59 | December 29, 2009 | Motion of Defendants Schuylkill County Sheriff's Department, Schuylkill County Prothonotary office, Court Administrator's Office, Jane Doe or John Doe to Dismiss Plaintiffs' Amended Complaint |
| Doc. 66 | January 5, 2010 | Motion of Defendant Pennsylvania Tax Collection, Inc. to Dismiss Plaintiffs' Amended Complaint |
| Doc. 68 | January 6, 2010 | Motion of Defendants Kline Township, Kline Township Supervisors, and Kline Township Police to Dismiss Plaintiffs' Amended Complaint |

| Doc. 69 | January 6, 2010 | Motion of Defendant Commonwealth of Pennsylvania to Dismiss Plaintiffs' Amended Complaint |
|---------|-----------------|-------------------------------------------------------------------------------------------|
| Doc. 70 | January 6, 2010 | Motion of Defendants Hazle Township and Hazle Township Board of Supervisors to Dismiss Plaintiffs' Amended Complaint |
| Doc. 74 | January 6, 2010 | Motion of Defendant Hazleton Area School District to Dismiss Plaintiffs' Amended Complaint |
| Doc. 79 | January 7, 2010 | Motion of Defendants Francis Patton and Kline Township Municipal Authority to Dismiss Plaintiffs' Amended Complaint |
| Doc. 82 | January 8, 2010 | Motion of Defendant Hazleton City Water Authority to Dismiss Plaintiffs' Amended Complaint.[6] |

All eleven (11) Motions to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) are ripe for disposition.  In the present Report and Recommendation ("R&R"), we address  the Motion to Dismiss of the six (6) Schuylkill County Defendants, namely, Schuylkill County Tax Claim Bureau, Mantura M. Gallagher, Robert S. Frycklund, Shelly K. Morrison, Russell T. Motsko, and Denise McGinley-Gerchak. **(Doc. 56).**  In this R&R, we also include Defendant #6, "Pamela," a Schuylkill County Tax Claim Bureau clerk, as a Schuylkill County Defendant.  With respect to Defendant #6, "Pamela," on January 6, 2010, Defendant Schuylkill County Tax Claim Bureau ("SCTCB") (Defendant #1) filed a separate Motion to Strike service as to Defendant #6,

---

[6]To date, all Defendants except for Defendant # 10, Mid County Resources, LLC ("MCR"), have joined in a Motion to Dismiss Plaintiffs' Amended Complaint.  Also, it does not appear that Plaintiffs properly served Defendant MCR with their Amended Complaint (*See* Doc. 62).  Further, no entry of appearance has been filed on behalf of Defendant MCR.  In any event we will recommend that Defendant MCR be dismissed under Rule 4(m).

Pamela, due to insufficient service pursuant to Fed. R. Civ. P. 12(b)(5).  **(Doc. 72).**  Defendant SCTCB also simultaneously filed a support Brief.  (Doc. 73).

Further, in the present R&R, we will address the  January 6, 2010 Rule 12(b)(6) Motion to Dismiss of  Defendant Commonwealth of Pennsylvania ("PA Defendant"), Defendant #17 **(Doc. 69)**, and the Briefs filed relative to this Motion.  (Docs. 69, 71 and 105).

Thus, we address herein **Docs. 56, 69 and 72.**  We will address the other ripe Motions to Dismiss in separate R&R's.[7]

As Plaintiffs recognize (Doc. 53, p. 1), jurisdiction of this action is based on federal question, 28 U.S.C. § 1331.  This Court also has jurisdiction with respect to Plaintiffs' § 1983 claims  pursuant to 28 U.S.C. § 1343(a).

## II.  Allegations of Amended Complaint (Doc. 53).

Plaintiffs assert six (6) causes of action in their Amended Complaint which they refer to as "Part One" through "Part Six."  Since only three of Plaintiffs' causes of action, Part One, Part Two, and Part Five, pertain to the present Schuylkill County Defendants, we limit our discussion in this R&R with respect to those causes of action.

As their first claim in their Amended Complaint, "Part One," Plaintiffs essentially allege Defendant Schuylkill County Tax Claim Bureau ("SCTCB") refused to accept their personal checks, which they stated were legal tender under federal bank laws, as payment for back taxes they owed on their properties, starting on November 18, 2008, and they allege that all seven Schuylkill County

---

[7]The undersigned has been assigned this case for all pre-trial matters.
On June 22, 2010, we filed an R&R regarding the Doc. 55 Motion to Dismiss and the Doc. 66 Motion to Dismiss. (Doc. 122).

Defendants, Schuylkill County Tax Claim Bureau, Mantura M. Gallagher, Robert S. Frycklund, Shelly K. Morrison, Russell T. Motsko, Denise McGinley-Gerchak, and "Pamela" (Doc. 53, p. 1, Defendants numbers 1-7), as well as Defendant #17, "State of Pennsylvania through Attorney General" ("PA Defendant"), violated their constitutional rights by falling to accept their personal checks to pay the taxes owed on their properties.[8]

Plaintiffs aver that by the refusal of the Schuylkill County Defendants to accept their personal checks to pay their property taxes and by Defendants' subsequent attempt to take their properties for "non payment of taxes," the conduct of these Defendants amounted to harassment "along with racketeering to steel (sic) [their] property." (Doc. 53, p. 3). Specifically, Plaintiffs allege:

> 29. That plaintiff/s also feel that not accepting legal tender as payment of taxes and then trying to take the property for non payment of taxes should be considered harassment, and if done for more then (sic) one property by same person or same group of persons or identities to one or more persons should be considered systematic Harassment along with racketeering to steel (sic) the property, thus giving rise to punitive and exemplary damages.

(*Id.*, ¶ 29.)

Plaintiffs aver that the policy of Schuylkill County which prohibits its residents from paying their property taxes with personal checks, which Plaintiffs state "are legal tender under federal bank laws," violated their constitutional rights as well as their "Human rights." (*Id.*, p. 2). As Exs. 1A-1F attached to their Amended Complaint, Plaintiffs submit copies of their personal checks payable to SCTCB, along with the form letters from the Schuylkill County Tax Clerk returning their checks with

---

[8]Plaintiffs mostly refer to Defendants by the number which Plaintiffs assigned to Defendants on page 1 of their Amended Complaint, Doc. 53, p. 1.

a notation that "No personal or business checks will be accepted. Only certified checks, cashier's checks, or money orders are acceptable forms of payments." (Doc. 53, Ex. 1A). Plaintiffs allege that "to own property and pay taxes through legal tender is a civil and constitutional right." (*Id.*, p. 3).

Plaintiffs also seem to vaguely allege a civil conspiracy existed between the seven Schuylkill County Defendants, Defendants #1-#7, and PA Defendant, Defendant #17.

As relief for their first cause of action, Part One, Plaintiffs seek compensatory and punitive damages against the seven Schuylkill County Defendants and PA Defendant. Plaintiffs also seek declaratory relief, including a request that the Court declare that the policy of Schuylkill County which prohibits its residents from paying their property taxes with personal checks to be in violation of their constitutional rights. (*Id.*, p. 2).

In their second cause of action, "Part Two," Plaintiffs again seem to name only the seven Schuylkill County Defendants, Defendants #1-#7, and PA Defendant, Defendant #17. In "Part Two," Plaintiffs aver as follows:

> 38. That arising out [of] arbitrary and malicious refusal of payments towards taxes, through the legal tender issued in form of bank check by the bank's own account and mailed by the bank to defendant #1 [SCTCB] on multiple occasions starting on or about 11/18/08 (Exhibit 1A).

> 39. That later on about 9/25/09 selling the property Parcel No.: 15-11-51 having fair market value of $106,913 (according to defendant #1) to defendant #10 [MCR] for alleged tax balance of about $1301 (Exhibit 2D). This is also challenged on the grounds of procedural and actual Unconscionability.

(*Id.*, p. 4, ¶'s 38. and 39.).

Additionally, in their second cause of action, "Part Two", Plaintiffs aver "that any laws which allow Defendants #1, 2, 3, 4, 5, 6, 7 and 17 [Schuylkill County Defendants, Defendants #1-#7, and PA Defendant, Defendant #17] to refuse payments totaling about $3000 in the form of bank checks, and then put the property parcel No.: 15-11-51 in tax default for the amount of about $1303, and then sell it to Defendant #10 [Mid County Resources, LLC] is malafide (sic), arbitrary, fraudulent, unconscionable, mischievous, unconstitutional and unconscionable (sic)." (*Id.*, p. 4, ¶ 41.).

In "Part Two," Plaintiffs further aver as follows:

44. That demand declaration that any laws/rules of Pennsylvania state and/or Schuylkill county rules which prohibit payment of taxes by a citizen in form of Bank Issued check (which is legal tender under Federal Bank laws) and/or allows Schuylkill County Tax Claim Bureau to refuse Bank Issued Checks for payment of taxes on the properties in Schuylkill County, be declared unconstitutional as it can be used for this type of criminal scheme.

45. That demand declaration that refusal of legal tender as payment of taxes was done by individuals working for Pennsylvania state and/or Schuylkill county and action should be taken by proper federal authorities to stop government offices being used as criminal enterprise.

(*Id.*, p. 4, ¶'s 44.-45.).

To the extent that Plaintiffs allege that Schuylkill County Defendants, Defendants #1-#7, and PA Defendant, Defendant #17, were engaged in a "criminal scheme" and they seek federal authorities to prosecute these Defendants for their alleged "criminal behavior" in refusing to accept their personal checks as payment for the property taxes they owed on their Schuylkill County properties, the Court cannot grant as relief in a §1983 action the initiation of federal criminal

prosecution. The Third Circuit has held that a private person could not impose criminal liability on a defendant since he lacked standing to do so. *See Conception v. Resnik*, 2005 WL 1791699, * 2, 143 Fed.Appx. 422, 425-26 (3d Cir. 2005) (Non-Precedential).

As mentioned, Plaintiffs seek the Court to file criminal charges against all Defendants for the alleged violations of their constitutional rights. This Court has no authority to grant such requests for relief in a civil rights action under §1983. *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.) aff'd. in relevant part, C.A. No. 09-1486 (3d Cir. 5-21-10). We recommend that Plaintiffs' request for relief be stricken insofar as they seek the Court to file criminal charges against all Defendants.

Plaintiffs detail their remaining allegations as against the Schuylkill County Defendants as follows:[9]

> 48. That history of incident started some time on or about 11/24/08 when Defendant #5 returned the first bank's check for $300 (Exhibit 1A).
>
> 49. That on or about 12/29/08, 1/23/09, and 2/23/09, when Defendant #6 returned the plaintiff # 1 bank's different c hecks totaling $1200 (Exhibit 1B to D).
>
> 50. That on or about 3/18/09 Defendant #1 accepted the plaintiff bank's check for $300 (Exhibit 1E).
>
> 51. That on or about 4/28/09, 6/22/09, and 7/22/09 Defendant # 5 returned the plaintiff banks checks totaling $900 (Exhibit 1F, G & I).
>
> 52. That on or about 5/18/09 and 8/18/09 Defendant #1 did not cash the plaintiff bank's checks totaling $600.

---

[9]Plaintiffs also include Defendant #17, PA Defendant, with respect to some of the quoted allegations.

53.   That this caused the alleged default on tax on the Property
      Parcel No.: 15-11-51.

54.   That all the return of checks each separately was violation of
      plaintiff's civil rights by defendants # 1, 2, 3, 4, 5, 6, 7 and 17 were
      only possible as these defendants were clothed in color of State
      and/or County Laws and authority.

55.   That plaintiff/s believes that to own property and pay taxes
      through legal tender is a Civil and Constitutional Right.

56.   That plaintiff/s also feel that not accepting legal tender as payment
      of taxes and then trying to take the property for non payment
      of taxes should be considered harassment and if done for more
      then (sic) one time by same person or same group of persons or
      identities to one or more persons should be considered systematic
      Harassment along with racketeering to steel (sic) the property,
      thus giving rise to punitive and exemplary damages.

(*Id.*, pp. 4-5, ¶'s 48.-56.).

Plaintiffs state that the alleged "criminal scheme" by the Schuylkill County Defendants, along with PA Defendant, to refuse their personal checks as payment of their property taxes, seemingly on three (3) properties they owned, and to then list their properties as being in tax default, and to sell one of the properties at a tax sale, violated their constitutional rights. Plaintiffs do not specify in their Parts One and Two which of their constitutional rights were allegedly violated by the Schuylkill County Defendants and PA Defendant, but they state that "to own property and pay taxes through legal tender is a civil and constitutional right." (*Id.*, p. 5, ¶ 55.).

As relief for their second cause of action, "Part Two," Plaintiffs seek compensatory and punitive damages against the seven Schuylkill County Defendants and PA Defendant.[10]

_____

[10]In ¶ 47. of their Amended Complaint, Doc. 53, p. 4, Plaintiffs state they seek an award of damages as against the seven Schuylkill County Defendants, Defendants Nos. 1-7, and

Plaintiffs also seek declaratory relief, including a request that the Court declare the policy of Schuylkill County which prohibits its residents from paying their property taxes with personal checks to be in violation of their constitutional rights. (*Id.*, p. 4).

Plaintiffs also implicate the seven Schuylkill County Defendants in their fifth cause of action, "Part Five." (Doc. 53, pp. 8-10). Plaintiffs aver that Defendant Hazleton Area School District (Defendant #9) filed a property tax lien against them in Schuylkill County and that the present seven Schuylkill County Defendants, Nos. 1 - 7, violated their constitutional rights, *i.e.* due process rights, by "record[ing] liens from out of [the] county without [the] county's court of record's (sic) orders." (Doc. 53, p. 9, ¶ 107.(f)).

As relief for their fifth cause of action, "Part Five," Plaintiffs seek compensatory and punitive damages against the seven Schuylkill County Defendants as well as a declaratory judgment against them. (*Id.*, p. 9).

While Plaintiffs (Doc. 53, p. 1) do not indicate if they sue the individual Schuylkill County Defendants in their personal and/or official capacities, we agree with Defendants (Doc. 57, p. 10), that Plaintiffs' claims against them in their official capacities should be dismissed. *See Carlton v. City of Phila.*, 2004 WL 633279 (E.D. Pa.).

Insofar as Plaintiffs name Defendant #6 only as "Pamela," seemingly a clerk with the SCTCB, Plaintiffs' Exhibits 1B, 1C and 1D (Doc. 53) are copies of form letters on SCTCB letterhead, dated

---

against Defendant #11. We construe Plaintiffs' reference to Defendant #11 in ¶ 47. to be a typographical error and that they intended to refer to Defendant #17, PA Defendant, since this Defendant was also implicated in Plaintiffs' Part Two, and not Defendant #11 (Kline Twp. Supervisors). Defendant #11 is implicated in Plaintiffs' third cause of action, "Part Three."

December 19, 2008, January 23, 2009 and February 23, 2009, sent to Plaintiffs in which Plaintiffs'

personal checks were returned with the block checked that no personal checks will be accepted.

The form letters were signed by "Tax Claim Clerk Pamela." Defendants note that "Pamela may

be a former clerk of employee of the [SCTCB] who has not been properly identified or served in

this case." (Doc. 56, p. 1, n. 1).[11]

## III. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive

rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 284-85 (2002).[12] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385

F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653,

660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa.

2007) ("only those who act under color of state law are liable to suit under section 1983.").

---

[11]Doc. 62, Plaintiffs' Certificate of Service for their Amended Complaint, reveals that Defendant #6, "Pamela," was not properly served with Plaintiffs' Doc. 53 Amended Complaint. Also, as noted above, Defendant MCR was not properly served with Plaintiffs' Amended Complaint.

[12]Plaintiffs allege in their amended pleading that Defendants are state officials or state agents.

"In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.[13]

---

[13]As stated above, it is well settled that personal liability under §1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See Ascenzi v. Diaz,* 2007 WL 1031516, *3 (M.D. Pa.)("supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct")(citations omitted).

**IV. Motion to Dismiss Standard.**

The Court in *Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009), set forth the Motion to Dismiss standard of review, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. –, 127 S. Ct. 1955 (2007), and as refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. *Neitzke; Scheuer v. Rhodes*, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, ----, --- L.Ed.2d ----, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See *California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir.2004) citing *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 556, citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.
>
> In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 232, quoting *Twombly*, 550 U.S. at 556 n. 3.

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

> The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> > [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

> > *Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).[14]

---

[14]In their Doc. 89 opposition Brief, pp. 6-8, to the Motion to Dismiss of the Schuylkill County Defendants, Plaintiffs recognize the effect of the *Iqbal and Twombly* cases on the Rule 12(b)(6) standard.

As Defendants recognize, the Court can consider the exhibits submitted by the parties. The Court in *White v. Probation Office*, 2008 WL 3837045, *1, n. 3 (M.D. Pa.), noted:

> "[t]he court may consider documents of record and exhibits submitted by the parties when evaluating a motion to dismiss. *See Tilbury v. Aames Home Loan,* 199 F. App'x 122, 125 (3d Cir.2006) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384-85 n. 2 (3d Cir.1994)) (observing that a court may consider exhibits submitted by the parties when ruling on a motion to dismiss)."

## V. Discussion.

1. *Motion to Dismiss of Defendant #6, "Pamela" (Doc. 72) and Dismissal of Defendant MCR under Rule 4(m)*

As stated, Defendant #6, is "Pamela," a Schuylkill County Tax Claim Bureau Clerk during the relevant time of this case. She is named, at least partially by her first name, as one of the seven Schuylkill County Defendants. With respect to Defendant #6, "Pamela," on January 6, 2010, Defendant SCTCB (Defendant #1) filed a separate Motion to Strike service as to Defendant #6, "Pamela," and to dismiss this Defendant due to insufficient service pursuant to Fed. R. Civ. P. 12(b)(5). (Doc. 72). Defendant SCTCB also filed the Affidavit of Defendant #3, Robert S. Frycklund, Director of SCTCB, in support of its Motion to Dismiss Defendant #6, "Pamela." (Doc. 84).[15]

Defendant Frycklund avers that Plaintiffs attempted to serve both their original Complaint and their Amended Complaint on "Pamela" at the SCTCB's office in Pottsville, Pennsylvania. Frycklund then avers that "[s]ince the filing of the original Complaint, there is no current employee

---

[15]Defendant #6, "Pamela," was also named as a party Defendant in Plaintiffs' original Complaint, Doc. 1, p. 1.

18

at the Tax Claim Bureau known as Pamela. To the extent that Pamela (no last name identified) is a former employee, the [SCTCB] is not authorized to accept service on her behalf." (Doc. 84, ¶ 4.). Schuylkill County Defendants cite to Doc. 62 as support, namely, Plaintiffs' Certificate of Service indicating they mailed a copy of their Amended Complaint to Defendants. Schuylkill County Defendants argue that the attempted service of process upon Defendant "Pamela," a former SCTCB employee, at the SCTCB is improper under Rule 4(e). They state that since there was no "Pamela" employed by the SCTCB at the time this case was instituted and service of both pleadings was attempted by Plaintiffs, "Pamela" was not properly served by Plaintiffs with either of their pleadings at the SCTCB, and this Defendant should be dismissed.

Plaintiffs state that their Exhibits 1B, 1C and 1D attached to their Amended Complaint, Doc. 53, show that "Pamela" was a Tax Claim Clerk with SCTCB. (Doc. 89, p. 6). Plaintiffs seemingly contend that they could serve her at the SCTCB despite the evidence of the Schuylkill County Defendants that she was no longer employed at SCTCB when Plaintiffs commenced this action.

In *Logan v. Lockett*, 2008 WL 4170271, *1 (W.D. Pa.), the Court stated:

> Rule 4 of the Federal Rules of Civil Procedure requires that a copy of a summons and complaint be delivered to a defendant or his appointed agent personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. Fed. R. Civ.P. 4(e)(2). Here, the proof of service shows that service was attempted by leaving the complaint and summons with a corrections officer at SCI-Greensburg. There is, however, no indication that this person, Lt. Sullenberger, had any authority to accept service on behalf of Defendant Muhammad. Indeed, it is not clear what, if any, employment relationship Defendant Muhammad has with the Pennsylvania Department of Corrections. Thus, service has not been effectuated under Rule 4(e)(2).

However, Rule 4(e)(1) also permits service as permitted under state law. In this respect, Rule 402 of the Pennsylvania Rules of Civil Procedure provides that original process may be served "by handing a copy to the defendant" or "by handing a copy ... at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. Civ. P. 402. Again, Defendant Muhammad was not personally served, and there is no evidence on this record that the person served is Defendant Muhammad's agent. Further, even if the Court were to assume that Defendant Muhammad is an employee of the Department of Corrections, under Pennsylvania law, the provision for service at a usual place of business on the person "in charge" does not apply where the person being served is an employee. *City of Philadelphia v. Davis,* 30 Pa.Cmwlth. 34, 373 A.2d 1154, 1155 (Pa.Cmwlth.1977) (interpreting prior rule, service of process on defendants' supervisor at place of employment was insufficient). Therefore, proper service has not been effectuated under Pennsylvania law, and Rule 4(e)(1) is not applicable.

Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to the entry of default. *E.g., Fisher v. Lynch,* 531 F.Supp.2d 1253, 1269 ftnt. 12 (D.Kan., 2008).

In *Patterson v. City of Phila.*, 2009 WL 1259968, *7-*8 (E.D. Pa.), the Court stated:

Under Fed.R.Civ.P. 4(e)(2), a plaintiff may either deliver process "to the person individually," deliver process to a person "at the individual's dwelling place or usual place of abode, or deliver process to "an agent authorized by appointment or law to receive service of process." Service to Mr. Gibson's former place of employment is insufficient under this rule. Even if service was not authorized under Rule 4(e)(2), however, it may still be effective under Rule 4(e)(1). That subpart provides that alternative methods of delivering service are effective if they are authorized under state law. *See* Fed.R.Civ.P. 4. As relevant here, the Pennsylvania Rules of Civil Procedure allow a plaintiff to serve a defendant with a complaint either by "handing a copy to the defendant," or by handing a copy "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. Civ. P. 402. At the time of attempted service, the DA's office was not, and had not been for two years, the office or usual place of business of Mr. Gibson. *Cf. Johnson-Lloyd v. Vocational Rehabilitation Office,* 813 F.Supp. 1120, 1125 (E.D.Pa.1993) (dismissing complaint against retired employee for insufficient process where service attempted at office of employer).

Plaintiff has had sufficient opportunity to effectuate service on Mr. Gibson, but has failed to do so.FN7 As such, Mr. Gibson has not been served with process within the 120 day period contemplated by Federal Rule of Civil Procedure 4. Accordingly, the Court will dismiss Mr. Gibson from this action.

Plaintiffs have clearly not effectuated proper service on Defendant #6. "Pamela," and on Defendant MCR under Rule 4(e)(2). There is no indication that anyone who was still employed at SCTCB was an agent authorized to accept service on behalf of Defendant "Pamela." Nor is there any record that Plaintiffs served an authorized agent to receive service of process on behalf of Defendant MCR. Thus, we must look to Rule 4(e)(1). Based on *Logan and Patterson,* we also find that Defendant "Pamela" and Defendant MCR were not properly served under Pennsylvania law, *i.e.* PA Rule 402, and that Fed. R. Civ. P. 4(e)(1) is not applicable. Plaintiffs have had more than ample time since they instituted this action on October 6, 2009, to properly serve Defendants "Pamela" and MCR, and they have failed to do so. In fact, it has been well over 120 days since Plaintiffs filed this action and since they filed their Amended Complaint (over 5 months ago). Plaintiffs have failed to show good cause why they have not properly served Defendant #6, "Pamela," under Rule 4 (m) despite the fact that they were on notice of their improper service when the Schuylkill County Defendants filed their Doc. 56 Motion to Dismiss in December 2009.

As the Court stated in *Banks v. One or More Unknown Named Confidential Informants of Federal,* 2008 WL 2563355, *1, n.1 (M.D. Pa.):

> Federal Rule of Civil Procedure 4(m) requires that service of a summons and complaint be effectuated upon each defendant "within 120 days after the filing of the complaint." The rule further provides that, if such service is not completed, the court must "dismiss the action without prejudice as to that defendant." Fed. R. Civ. P. 4(m).

In the instant case, Banks is not responsible to effectuate service personally because he is proceeding *in forma pauperis*. ( *See* Doc. 10); *see also* 28 U.S.C. § 1915(c) (stating that "the officers of the court shall issue and serve all process" when the plaintiff is proceeding *in forma pauperis* ). Nevertheless, Banks is responsible to identify the parties named as defendants in order to permit the United States Marshal to effectuate service within the time limit proscribed by Federal Rule of Civil Procedure 4(m). *See Okagbue v. Ojekwe v. Federal Bureau of Prisons,* No. 03-2035, 2007 WL 4570075, at *3 (D.N.J. Dec.26, 2007) (stating that a prisoner must "furnish[ ] the Marshal with the necessary information to effect service" before asserting that service defects should be excused for "good cause"); *Goodwin v. LA Weight Loss Centers, Inc.,* No. 99-6339, 2001 WL 34387933, at *1 (E.D.Pa.2001) ( *"As long as the plaintiff provides adequate information to identify the party to be served,* a complaint should not be dismissed under Rule 4(m) for the Marshals Service's failure to effectuate proper service." (emphasis added)). As of the date of this memorandum and order, Banks has failed to provide sufficient identifying information to permit service upon the unknown named defendants ( *see* Doc. 48), and far greater than 120 days have passed since the court directed service of the amended complaint on September 13, 2007 ( *see* Doc. 46). Accordingly, the court must dismiss without prejudice all claims against the unknown named defendants. See Fed. R. Civ. P. 4(m).

*See also Phillips v. Miller*, 2010 WL 771793, *1 & *6 (M.D. Pa.).

Therefore, we will recommend that the Doc. 72 Motion to Dismiss Defendant #6, Pamela, due to improper service be granted and that Defendant Pamela be dismissed.[16] We will also recommend that Defendant MCR be dismissed under Rule 4(m).[17]

---

[16]Even if Defendant #6, "Pamela," is not dismissed due to improper service and she is considered along with the other Schuylkill County Defendants, she should be dismissed with prejudice based on our discussion below regarding the Motion to Dismiss of Schuylkill County Defendants #1, 2, 3, 4, 5, and 7 (Doc. 56).

[17]We also find that Plaintiffs' allegations against Defendant MCR, the private company which purchased Plaintiffs' property from Defendant SCTCB at the tax sale, fail to state a cognizable constitutional claim against this Defendant under § 1983. Plaintiffs do not allege that Defendant MCR was a state agency. Nor do Plaintiffs properly allege that Defendant MCR was acting on behalf of a state actor. Thus, Defendant MCR is not a proper Defendant in this §

2. *Motion to Dismiss of Schuylkill County Defendants #1, 2, 3, 4, 5,*
   *and 7 (Doc. 56)*

   A. *Schuylkill County Defendants*

The six (6) remaining Schuylkill County Defendants, Defendants #1,2, 3, 4, 5 and #7, move to dismiss Plaintiffs' Amended Complaint entirely as against them for several reasons. (Doc. 56, pp. 2-3). We agree with Schuylkill County Defendants that Plaintiffs have failed to state a viable constitutional claim against the remaining five individual Defendants, #2, 3, 4, 5 and 7, and that Plaintiffs have failed to state a § 1983 claim against Defendant #1, Schuylkill County, under *Monell*.

As discussed, the gravamen of Plaintiffs' Amended Complaint is that the Schuylkill County Defendants along, with PA Defendant #17, were involved in a criminal scheme to deliberately refuse their personal checks for the payment of the real estate taxes they owed on their Schuylkill County properties so that they (Defendants) could then put Plaintiffs' properties up for tax sale. Plaintiffs allege that they had a constitutional right to pay their taxes by personal checks since the checks were legal tender under federal bank rules. Plaintiffs also claim that the policy of Defendant SCTCB not to accept personal checks was in violation of their constitutional rights, and that SCTCB's allowance of Defendant Hazleton Area School District ("HASD") to file and record a tax lien in Schuylkill County without a court order from the Schuylkill County Court should be declared unconstitutional.

---

1983 civil rights suit. *See Conway v. King Pharmaceuticals*, 2008 WL 4128088, * 1 (M.D. Pa.); *Jacobowitz v. M & T Mortg. Corp.*, 2010 WL 1063895 (3d Cir. 2010). Moreover, as discussed below, Plaintiffs are litigating the tax sale of t heir property in state court. (Docs. 59-3 and 59-4).

Schuylkill County Defendants argue in their Brief as follows:

> There is no federal or state constitutional provision which gives citizens the right to pay their delinquent taxes by personal checks. As stated by the Commonwealth in its Brief in Support of its Motion to Dismiss, it is common for local, state and federal taxing authorities to dictate the manner in which an individual must pay delinquent accounts. In this vein, the Commonwealth notes that it is a common practice in the regular business community concerning overdue accounts.
>
> Plaintiff has cited no authority for the proposition that there is a substantive civil right to pay one's taxes by personal check (an uncertified bank check). A legislative act or, in this case, Bureau policy will withstand substantive due process challenge if the government identifies a legitimate state interest. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). Here, the policy is justified by the Tax Claim Bureau's legitimate interest in requiring negotiable instrument which is not subject to dishonor. Here, all that the policy does is to specify the form in which payments for delinquent taxes are to be made. There is no right to stop payment on either a certified or cashier's check under the Uniform Code § 4-403(1). However, a bank retains the right to stop payment on its own uncertified check or money order. *See Annotation,* 97 ALR 3d 714 and cases cited therein. As plaintiffs have no constitutional right to pay delinquent taxes by way of personal check, here an uncertified bank check. Absent a constitutional violation, plaintiffs' Amended Complaint fails to state a claim for violation of constitutional or civil rights under 42 U.S.C. § 1983 and the Amended Complaint must be dismissed.

(Doc. 57, p. 7).

We concur with Schuylkill County Defendants that there is no constitutional right under the United States Constitution and the Pennsylvania Constitution which afforded Plaintiffs the right to pay their real estate taxes owed on county properties by personal checks. We do not find that Plaintiffs cite to any legal authority for such a proposition. We simply do not find that Plaintiffs have stated any viable constitutional claim against the remaining six Schuylkill County Defendants. We also find that, to the extent Plaintiffs are challenging the Schuylkill County tax system and the policy of SCTCB not to accept personal checks, this Court lacks subject matter

jurisdiction over such a challenge under the Tax Injunction Act.[18]   We find that Plaintiffs

essentially seek this Court to declare Defendant SCTCB's tax system and method of accepting

payments for real estate taxes as unconstitutional.  Plaintiffs are also requesting that Defendant

SCTCB's system to record liens filed by other taxing authorities outside of the county (*i.e.*

Defendant HASD's lien) be declared unconstitutional.  As stated, Plaintiffs seeks both damages

and declaratory relief in their Amended Complaint.

In *Gass v. County of Allegheny, PA*, 371 F. 3d 134, 136 (3d Cir. 2004), the Third Circuit

stated:

> The Tax Injunction Act provides that "[t]he district courts shall not enjoin,
> suspend or restrain the assessment, levy or collection of any tax under
> State law where a plain, speedy and efficient remedy may be had in the
> courts of such State." 28 U.S.C. § 1341. Although the express language of
> the Tax Injunction Act only refers to injunctive actions, the Supreme
> Court has held that the Tax Injunction Act also prohibits federal courts from
> issuing declaratory judgments holding state tax laws unconstitutional.
> *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct.
> 2498, 73 L.Ed.2d 93 (1982).

Plaintiffs challenge the method used by Defendant SCTCB to collect real estate taxes on

properties located in Schuylkill County and Defendant SCTCB's method to record liens filed by

taxing authorities outside of Schuylkill County.  Plaintiffs' claims are directed to Defendant

SCTCB's responsibility of collecting the taxes owed on properties in Schuylkill County and its

responsibility to record liens.  These responsibilities fall within the Tax Injunction Act.  Plaintiffs

---

[18]Although the Schuylkill County Defendants did not argue in their Brief (Doc. 57) that
this Court lacks subject matter jurisdiction over Plaintiffs' present claims against them under the
Tax Injunction Act, "subject matter jurisdiction may be considered by the court *sua sponte*."
*Reisinger*, 2010 WL 1976821, *10(citation omitted).

seek this Court to find that Defendant SCTCB's method of collecting taxes and method of recording liens from outside taxing authorities are unconstitutional. Plaintiffs assert that Defendant SCTCB's policy of not accepting their personal checks for the payment of the real estate taxes they owed on their properties in Schuylkill County violated their civil rights and was unconstitutional.

"The Tax Injunction Act divests federal courts of jurisdiction only if the state fails to provide a 'plain, speedy and efficient' remedy in its court." *Id*. at 137. The Third Circuit construes narrowly the "plain, speedy and efficient" exception to the Tax Injunction Act. *Id*. Also, the Third Circuit has held that "Pennsylvania provides a 'plain, adequate and complete' remedy for §1983 Plaintiffs challenging state taxation policies." *Id*. at 138, quoting *Balazik v. County of Dauphin*, 44 F. 3d 209 (3d Cir. 1995). Plaintiffs Agarwal have not cited to any cases or Pennsylvania law which shows that Pennsylvania does not have a "plain, adequate and complete" remedy to challenge taxation policies in the state. Also, Plaintiffs could have challenged any listing of their properties for tax sale in the Schuylkill County Court of Common Pleas, and they could have challenged the lien filed against their properties in Schuylkill County by Defendant HASD in this state court. Further, the exhibits in this case show that Plaintiffs filed, through counsel, an Objection/Exception to the Tax Sale of their property by Defendant SCTCB with the Schuylkill County Court of Common Pleas and that this Court held a hearing on Plaintiffs' Objection. (Docs. 59-3 and 59-4).

As the *Gass* Court stated, "[t]he Tax Injunction Act does not require that the state courts provide a favorable substantive outcome; instead, it only requires access to the state courts and

an opportunity for meaningful review." *Id*. at 139. Plaintiffs were required to pursue their statutory and administrative remedies under Pennsylvania law to challenge the listings of their properties for tax sale in Schuylkill County. *Id*. The *Gass* Court, citing the United States Supreme Court in *Rosewell v. La Salle Nat. Bank*, 450 U.S. 503, 522 & n. 29 (1981), stated that "'first and foremost', the [Tax Injunction] Act was designed to prohibit federal judicial interference with local tax collection." *Id*. at 140. The *Gass* Court concluded as follows:

> Lastly, Appellants argue that the Tax Injunction Act is unconstitutional to the extent that it deprives them of a forum to adjudicate their constitutional claims. This argument is baseless. Because the Tax Injunction Act only prohibits federal jurisdiction where there is a "plain, speedy, and efficient" remedy at state law, the Act clearly provides for a forum in which Appellants may grieve their alleged deprivation. Where the state forum is adequate, parties may assert their constitutional claims in state court; where the state forum is inadequate, parties may sue in federal court. Because the Pennsylvania state courts are open to Appellants, they may (continue to) pursue their constitutional claims in state court. FN3
>
> FN3. Because the federal courts do not have jurisdiction to review Appellants' claim, we need not address the substance of Appellants' claim regarding the use of *ex parte* evidence during the appeals process.

*Id*. at 141.

Indeed, our Plaintiffs do not even allege that Schuylkill County failed to use proper procedures under Pennsylvania law to list their properties for tax sales and to sell them; rather, as stated, Plaintiffs allege that the Schuylkill County Defendants, along with Defendant PA, engaged in a criminal scheme and enterprise to refuse their personal checks they submitted to pay their taxes so they could list their properties for tax sales.

As indicated above, insofar as Plaintiffs seek the Court to appoint a special federal prosecutor and to have federal criminal charges filed against the Schuylkill County Defendants,

only the United States Attorney in the Middle District of Pennsylvania can pursue federal criminal charges, and such relief is not available in a § 1983 civil rights action. *See Conception, supra.* This Court has no authority to grant such requests for relief in a civil rights action under §1983. *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.) aff'd. in relevant part, C.A. No. 09-1486 (3d Cir. 5-21-10). We recommend that Plaintiffs' request for relief be stricken insofar as they seeks the Court to file criminal charges against all Defendants.[19]

Plaintiffs' Ex. 6A attached to their Amended Complaint shows that on October 6, 2009, Defendant SCTCB issued a Notice to Plaintiff Madhu Agarwal that the Schuylkill property she owned known as Parcel #15-11-51, one of the parcels Plaintiffs claim Defendant SCTCB improperly refused to accept their personal checks for the taxes owed on it, was sold at a Tax Sale on September 25, 2009, for the collection of delinquent taxes incurred in 2007 or for prior years. The Notice gave Plaintiff 30 days to file Objections or Exceptions to the sale. It also stated as follows:

> Notice is hereby given that on or about October 13, 2009, the Tax Claim Bureau of the County of Schuylkill will present to the Court of Common Pleas of Schuylkill County its consolidated Report and

---

[19]Even if Plaintiffs did pursue their state administrative remedies and state court remedies regarding their allegations that Defendant SCTCB acted improperly by refusing to accept their personal checks to pay their real estate taxes, and the state court found that Defendant SCTCB followed proper procedures with respect to the SCTCB's tax sale of Plaintiffs' properties, any challenge by Plaintiffs to the state court's findings in a civil rights action would be barred by the *Rooker-Feldman* doctrine. *See Reisinger*, 2010 WL 1976821; *Jacobowitz v. M&T Mortgage Co.*, *supra*. In essence, Plaintiffs would be using a civil rights action as a vehicle to appeal state court orders issued with respect to Defendant SCTCB's tax sale of their properties. The federal court would have to find that the state court made incorrect decisions regarding the tax sale of Plaintiffs' properties, and it cannot do this under the *Rooker-Feldman* doctrine. *See Ash v. Redevelopment Auth. of Phila.*, 143 Fed. Appx. 439 (3d Cir. 2005).

> Return of the Upset Sale held on September 25, 2009, on claims for
> delinquent taxes under Act No. 342, approved July 7, 1947, as amended.

(Doc. 53, Ex. 6A).

Plaintiffs' Ex. 6C is a copy of a "Caveat" they sent to the Schuylkill County Court of Common Pleas dated October 20, 2009, requesting that the state court take judicial notice of their civil rights action filed in federal court docketed to Civil No. 09-1921, M.D. Pa., *i.e.* their instant case. Plaintiffs also requested that, before the state court issued any order seemingly regarding the tax sale of their property, they be heard.

As stated, "[t]o establish a claim under §1983, the Plaintiff must show that a person acting under color of state law violated a right secured by the United States Constitution and the laws of the United States." *Reisinger*, 2010 WL 1976821, *15. "In order to prevail on a § 1983 claim against multiple Defendants, the Plaintiff must show that each Defendant violated his constitutional rights." *Id.* (citation omitted).[20]

In *Reisinger*, the Court stated:

> The Due Process Clause of the Fourteenth Amendment prohibits the
> states from depriving any person of property without "due process of law."
> U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for deprivation
> of procedural due process rights, a plaintiff must allege: (1) he was deprived
> of an individual interest that is encompassed within the Fourteenth

---

[20]In *Reisinger,* the Court noted, "[a] municipality can only be held liable under a section 1983 theory 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' *Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978)." 2010 WL 1976821, *15, n. 23.

To the extent Plaintiffs name SCTCB as a Defendant, we must apply the principles of *Monell* to the claims against this Defendant. *Id.*

Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir.2006) ( *citing Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). In *Sample v. Diecks,* 885 F.2d 1099, 1113 (3d Cir.1989), the Third Circuit identified a plaintiff's need to allege and prove five things in relation to a § 1983 procedural due process claim:

(1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Id.* at 1113-14; *see also Zellner v. Monroe County Mun. Waste Management Authority,* No. 3:07-CV-1976, 2008 WL 2962595, at *5 (M.D.Pa. July 28, 2008) (Caputo, J.).

"The level of process due to a party prior to the deprivation of a property interest, under the Due Process Clause, is highly dependent on the context." *In re Mansaray-Ruffin,* 530 F.3d 230, 238 (3d Cir.2008). The United States Supreme Court noted the "cryptic and abstract words" of the Due Process Clause in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950). The Court held that prior to the deprivation of property, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, and afford them an opportunity to present their objections." *Id.* at 314. The Court has held that mail service "is reasonably calculated to provide actual notice," Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 490 (1988), and commented that due process requires nothing more and certainly not [in a case] where [the] petitioner had a statutory duty to pay his taxes," *Jones v. Flowers,* 547 U.S. 220, 241-42 (2006).

*Id.*

We agree with Schuylkill County Defendants that Plaintiffs have not stated any viable constitutional claim against them. The only possible constitutional right implicated is Plaintiffs' Fourteenth Amendment due process right. However, Plaintiffs do not allege that Schuylkill

County and Defendant SCTCB failed to use proper procedures under Pennsylvania law to list their property for tax sale and to sell it. Indeed, Plaintiffs' own evidence seems to show that Defendants followed proper Pennsylvania law. Rather, as stated, Plaintiffs allege that Schuylkill County Defendants engaged in a criminal enterprise to refuse their personal checks they submitted to pay their taxes in order to sell the properties at tax sales. Plaintiffs' own evidence shows that they had an opportunity to participate in the state court proceedings concerning the scheduling and tax sale of their property. (*See also* Docs. 59-3 and 59-4). Insofar as Plaintiffs allege that Schuylkill County Defendants wrongfully refused to accept their personal checks for their taxes and that the Policy of Defendant SCTCB was unconstitutional and caused their property to be sold at the tax sale, as discussed, we find that Plaintiffs have not stated any violation of their constitutional rights by these Defendants. Plaintiffs do not allege that they were deprived of their property without due process. Plaintiffs assert no claim that Defendant SCTCB failed to follow proper procedures with respect to the tax sale. They only assert that Defendant SCTCB's policy of not accepting personal checks was unconstitutional. Plaintiffs' own evidence indicates that they had notice that Defendant SCTCB sold their property at a tax sale on September 25, 2009, to pay off delinquent taxes they owed and that they could file Objections to the sale within 30 days. (Doc. 53, Ex. 6A). Plaintiffs had an opportunity to object to the tax sale and an opportunity to request the Schuylkill County Court of Common Pleas to overturn the tax sale on October 13, 2009, when Defendant SCTCB noticed Plaintiffs that it would present the sale to the court. (*Id*.). As stated, Plaintiffs then timely filed an Objection to the tax sale with the state court, and a hearing was scheduled. (Docs. 59-3 and 59-4). Plaintiffs appeared to

receive all the notice rights afforded to them under Pennsylvania law, namely 72 P.S.
§ 5860.602. As the *Reisinger* Court held, "this more than satisfies the process due in the situation of a tax sale." *Reisinger*, 2010 WL 1976821, *16. In fact, as Schuylkill County Defendants state (Doc. 57, p. 18), "Plaintiff[s] [have] available state remedies in the form of a right to object or accept to a tax sale and Plaintiffs have instituted an action in the Court of Common Pleas of Schuylkill County as to No. S-3043-09 raising exceptions and objections to the tax sale where the hearing is scheduled for November 12, 2009." We take judicial notice that in Court of Common Pleas of Schuylkill County, No. S-3043-09, Plaintiffs filed Objections to the tax sale of their property, and a hearing was scheduled. (Docs. 59-3 and 59-4).

Further, as Defendants point out, Plaintiffs do not allege that the individual Schuylkill County Defendants played any role in the formulation of the challenged policy of Defendant SCTCB. Thus, they are not even alleged to have been sufficiently personally involved in the claimed constitutional violation as required in a § 1983 action. *See Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).

Therefore, we will recommend that Plaintiffs' claims against the remaining individual Schuylkill County Defendants, namely, #2 Gallagher, #3 Frycklund, #4 Morrison, #5 Motsko, and #7 McGinley-Gerchak, be dismissed with prejudice. We will recommend that all Schuylkill County Defendants be dismissed with prejudice and without giving Plaintiffs another chance to amend their pleading, since we find that allowing Plaintiffs a third opportunity to amend would be futile. *See Reisinger*, 2010 WL 1976821, *17(Court found futility of allowing Plaintiff to amend since "Plaintiff himself admitted receiving appropriate notice of the Tax Claim Bureau's

Petitions regarding the sale of his properties for tax arrearages and that he also had the opportunity to present his objections to the sale.") citing *Phillips v. County of Allegheny*, 515 F. 3d 224, 236 (3d Cir. 2008). *See also Jacobowitz, supra.*

B. *Defendant Schuylkill County Tax Claim Bureau*

As Defendants recognize, and as noted above, Plaintiffs' claims against Defendant SCTCB must be analyzed in accordance with *Monell*. *Reisinger,* 2010 1976821, *15, n. 23. Further, as mentioned, Plaintiffs have named SCTCB as a Defendant pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978); *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008). Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies." *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.). Since Defendant SCTCB is a local governmental unit, the standards annunciated in *Monell* apply to it. *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.), 639 F. Supp.2d 566 (E.D. Pa. 2009).

As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. Because PrimeCare contracted to provide medical care to inmates at the Prison, the same standards apply. *See West,* 487 U.S. at 56, 108 S.Ct. 2250.

*Id.*

We agree with Schuylkill County Defendants and find that Plaintiffs have not properly stated a municipal liability claim under *Monell* against Defendant SCTCB with respect to any of their stated constitutional claims. Also, Defendant SCTCB cannot be held liable for the conduct of persons they supervise pursuant to *respondeat superior* as Plaintiffs attempt to do in this case with respect to all of their claims. *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9. Rather, "[Defendant SCTCB is] subject to liability to the extent [it] maintain[s] an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citation omitted).

As discussed above, the only custom or policy specifically alleged by Plaintiffs with respect to Defendant SCTCB is its policy not to accept personal checks for the payment of real estate taxes. We have agreed with Defendants that this policy did not violate any of Plaintiffs' constitutional rights. Also, as Defendants argue, there are no allegations that the individual Schuylkill County Defendants played any role in the formulation of Defendant SCTCB's policy not to accept any personal checks. (Doc. 57, p. 11). Even if there were such allegations, as discussed, the policy of Defendant SCTCB did not violate Plaintiffs' constitutional rights. Thus, we agree with Schuylkill County Defendants, who state as follows:

> [P]laintiff fails to allege a legally cognizable constitutional or civil rights violation arising from the Tax Claim Bureau policy of requiring that payment of delinquent taxes be made by "only certified checks, cashier's checks, and money orders". Plaintiffs' problem arose from their failure or refusal to heed plain and unambiguous instructions advising that no personal or business checks will be accepted and that payment must be made in a required manner. Hence, plaintiffs' Amended Complaint fails to establish an unconstitutional policy and fails to establish a direct causal link between the municipal policy or custom and any alleged constitutional deprivation.

34

For reasons stated herein, no constitutional violations have occurred in this case. When there is no constitutional violation, there can be no local governmental or individual supervisory liability. *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed. 2d. 806 (1986); *Grazier v. City of Philadelphia,* 328 F.3d 120, 124 (3d. Cir. 2003).

Further, a municipality may not incur *Monell* liability where, as here, the officials have inflicted no constitutional injury. *Williams v. Borough of West Chester,* 891 F.2d 458, 467 (3d Cir. 1989).

(Doc. 57, p. 9).

As the *Kokinda* Court stated:

A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior*. *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to "deliberate indifference . . . [to the constitutional rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional'' injury." *Id.* at 325 (citations omitted).

To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Plaintiffs do not make any allegations against Defendant SCTCB necessary to make it subject to municipality liable in a § 1983 action. Plaintiffs do not allege any causal nexus between an identifiable policy and their alleged constitutional injuries. We find that Plaintiffs have not sufficiently stated a claim under *Monell* against Defendant SCTCB with respect to any of their constitutional claims. Based on *Kokinda, Meyers*, and *Malles*, as well as *Mueller v. Centre County*, 2009 WL 4912305 (M.D. Pa.), we find Plaintiffs' allegations do not sufficiently state that Defendant SCTCB caused any alleged conduct of the individual Schuylkill County Defendants by having a custom, policy, practice and procedure, and how this policy gave rise to the constitutional violations alleged in the Amended Complaint. We find Plaintiffs' stated allegations against Defendant SCTCB, *i.e.*, it had a policy not to accept personal checks, to be clearly insufficient to state a claim under *Monell* against it. Therefore, we will recommend that Defendant SCTCB be dismissed with prejudice.

### C. Civil Rights Conspiracy Claim against Schuylkill County Defendants

As stated, Plaintiffs seem to vaguely allege a civil conspiracy existed between the seven Schuylkill County Defendants, Defendants #1-#7, and PA Defendant, Defendant #17. We agree with Defendants (Doc. 57, pp. 14-16) and find that Plaintiffs have failed to state a cognizable conspiracy claim against the Schuylkill County Defendants under § 1983.

Plaintiffs, while deemed as raising a § 1983 conspiracy claim against the Schuylkill County Defendants and PA Defendant #17, merely allege a vague conspiracy absent any specific agreement between Defendants, to deprive them of their "constitutional right" to be able to pay their property taxes with personal checks. As Defendants state, and as we have found, "Plaintiffs

36

have not been deprived of a right secured by the constitutional laws of the United States in that

there is no right to pay delinquent taxes by means of personal check or in certified bank check."

(*Id.*, p. 15). We find that Plaintiffs' bare conclusory allegations of a § 1983 conspiracy against the

Schuylkill County Defendants are inadequate to state a cognizable conspiracy claim. *See*

*Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir.

1992), *cert. denied* 510 U.S. 829 (1993). "The Plaintiff's allegations [of conspiracy] must be

supported by facts bearing out the existence of the conspiracy and indicating its broad objectives

and the role each Defendant allegedly played in carrying out those objectives. Bare conclusory

allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of

communication, consultation, cooperation, or command from which such an agreement can be

inferred." *Id.* at 928.

As the Court stated in *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 401

(M.D. Pa. 2003):

> To sustain a conspiracy claim under section 1983, [Plaintiff] must
> establish that: (1) defendants deprived him of a right secured by the
> Constitution or laws of the United States and (2) conspired to do so while
> acting under color of state law. *Adickes v S. H. Kress & Co.*, 398 U.S. 144,
> 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead,*
> 110 F.Supp.2d 361, 371 (E.D. Pa. 2000). Additionally, "'to [s]ufficiently
> allege a conspiracy, a plaintiff must show a combination of two or
> more persons to do a criminal act, or to do a lawful act by unlawful
> means or for an unlawful purpose.'" *Marchese*, 110 F.Supp.2d at 371
> (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa.
> 1999)) (other internal citations omitted). "A plaintiff must make
> specific factual allegations of combination, agreement, or understanding
> among all or between any of the defendants to plot, plan, or conspire
> to carry out the alleged chain of events.'" *Id*. (quoting *Panayotides v.
> Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal
> citations omitted).

We agree with Schuylkill County Defendants (Doc. 57, p. 15) that Plaintiffs do not specify any role or agreement of any Schuylkill County Defendant with any of the other individual Defendants or PA Defendant #17 in the alleged conspiracy to prevent them from paying their real estate taxes by personal checks so that they could then list their properties for tax sale and sell them. Further, as Schuylkill County Defendants point out (*Id*.), and as we have found above, Plaintiffs have not alleged that Defendants violated any cognizable constitutional right with respect to the policy of Defendant SCTCB.

Plaintiffs fail to allege what any Schuylkill County Defendant specifically conspired to do, or what specific actions these Defendants took in furtherance of the alleged conspiracy.[21]

Thus, we will recommend that Plaintiffs' § 1983 civil rights conspiracy claim against all Schuylkill County Defendants be dismissed. *See Kokinda v. Breiner*, 557 F. Supp. 2d at 588; *Eichelman, supra*. Also, as Schuylkill County Defendants contend (Doc. 57, p. 19), to the extent that Plaintiffs implicate them in the Amended Complaint in Part Three, claim for relief, and Part Four, claim for relief, Plaintiffs fail to state any cognizable constitutional claim against these Defendants in the body of these two causes of action in their amended pleading. Thus, Schuylkill County Defendants should be dismissed with respect to Part Three and Part Four of the Amended Complaint.

---

[21]*See Eichelman v. Lancaster County*, 510 F. Supp. 2d 377, 394 (E.D. Pa. 2007) (court granted prison warden summary judgment with respect to inmate's § 1983 conspiracy claim since there was no evidence that warden entered into any agreement with prison staff to violate inmate's constitutional rights).

*D.  Civil RICO claim against Schuylkill County Defendants*

We agree with Schuylkill County Defendants that, insofar as Plaintiffs are deemed as asserting civil RICO claims against them, these claims should be dismissed. (*Id.*, pp. 15-16).  As discussed above, Plaintiffs assert that "not accepting legal tender as payment of taxes and then trying to take the property for nonpayment of taxes ... should be considered systematic harassment along with racketeering to steel (sic) the property ... ."  (Doc. 53, p. 3, ¶ 29.).  Plaintiffs seem to allege that they have been injured by Schuylkill County Defendants due to their violations of RICO, 18 U.S.C. § 1962(c) and due to their conspiracy to violate RICO under §1962(d).  Schuylkill County Defendants argue that Plaintiffs have failed to state any civil RICO claim for which relief can be granted against them.  Plaintiffs seem to contend that they have stated a claim that Defendants conspired to violate RICO.

In *Ukasik v. McWilliams*, 2009 WL 3516441, *6-*7 (W.D. Pa.), the Court explained as follows with respect to a civil RICO claim:

> RICO provides a civil remedy for [a]ny person injured in his business or property by reason of a violation of Section 1962 of this chapter." FN22 18 U.S.C. § 1964(c). In turn, Section 1962 prohibits four types of activities. Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that income to acquire, establish or operate any enterprise which is engaged in interstate or foreign commerce.FN23 Section 1962(b) prohibits "any person through a pattern of racketeering activity" from acquiring or maintaining any interest in or control of any enterprise engaged in interstate or foreign commerce. Section 1962(c) prohibits any person employed by or associated with any enterprise engaged in interstate or foreign commerce from conducting or participating in the conduct of the enterprise's affairs "through a pattern of racketeering activity." Finally, Section 1962(d) prohibits any person from conspiring to violate any of the provisions of subsections (a), (b) or (c).FN24

FN22. A successful plaintiff in a civil RICO action may recover treble damages and the cost of the suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c).

FN23. Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

FN24. In the present case, Plaintiff asserts that Defendants violated all four subsections of Section 1962. (Document No. 48, ¶ 1).

Case law has established separate requirements for certain subsections of Section 1962FN25 *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3d Cir.1991). However, all subsections of Section 1962 require a "pattern of racketeering activity." No defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern. *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990).

FN25. For example, in *Kehr*, the Third Circuit noted that under Section 1962(a), a plaintiff must allege injury specifically from a defendant's use or investment of income from racketeering activity in the named enterprise and, under Section 1962(b), a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity. However, Section 1962(c) is not subject to these nexus limitations. Moreover, while an entity can be both an enterprise and a defendant for purposes of Section 1962(a), such a dual role is impermissible in actions based on Section 1962(c). *See* 926 F.2d at 1411.

Section 1961(1) sets forth a list of the predicate offenses that constitute "racketeering activity" under RICO. The list, which is exhaustive, may be divided into two broad categories. The first category includes acts or threats involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance that are chargeable under State law and punishable by

imprisonment for more than one year, while the second category includes acts that are indictable under specific federal statutes.[22]

Plaintiffs seem to assert their RICO claims against Schuylkill County Defendants based on their allegation that these Defendants refused their personal checks to pay their real estate taxes so that these Defendants could then sell their property for failure to pay their taxes. We agree with Schuylkill County Defendants that Plaintiffs' allegation lack the required predicate acts of racketeering activity. The predicate acts of racketeering, which the Plaintiffs claim were committed by Schuylkill County Defendants and which are alleged to constitute a pattern of racketeering activity, are discussed above. Plaintiffs claim that they are entitled to money damages since they have been injured by Schuylkill County Defendants' alleged conduct, and since these Defendants deprived them of their property by selling it at a tax sale. Plaintiffs seem to state that the predicate acts upon which they rely, namely, the failure to accept personal checks to pay taxes, allege a pattern of racketeering activity by the Schuylkill County Defendants which is sufficient to state a private civil RICO action against them.

As the Court stated in *Pagnotti Enterprises, Inc. v. Beltrami*, 787 F. Supp. 440, 444 (M.D. Pa. 1992):

> A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activity is defined as (A) certain acts chargeable under state law, (B) acts indictable under specific provisions of Title 18 of the United States Code, (C) acts indictable under specific provisions of Title 29 of the United States Code, (D) any offense involving fraud in connection with a case under Title 11, fraud in the sale of securities, or the felonious

---

[22]We deleted FN. 26 from the above quote since it was not relevant to our case.

41

manufacture or distribution of drugs, or (E) any act indictable
under the Currency and Foreign Transactions Reporting Act.
18 U.S.C. § 1961(1).

We agree with Defendants (Doc. 57, pp. 15-16) and find that Plaintiffs' allegations contained in their Amended Complaint, discussed above, regarding their RICO claims against all Defendants are vague and completely fail to assert conduct which constitutes predicate acts of racketeering. We also find that Plaintiffs' Amended Complaint is in violation of Rules 8(a) and 10 regarding their RICO claims. *See Plum Property Assoc., Inc. v. Mineral Trading Co., LLC*, 2009 WL 520613 (W.D. Pa.)("Plaintiff does not specifically aver how the Defendants functioned as an enterprise colluding to carry out fraudulent schemes."). We find that all of Plaintiffs' stated allegations of how they believe Schuylkill County Defendants' conduct constituted a pattern of racketeering activity to be completely insufficient in order to state any cognizable RICO claim. As in *Plum Property Assoc.*, our Plaintiffs' Amended Complaint fails to "sufficiently describe the structure, purpose, function and course of conduct of the enterprise." Nor does Plaintiffs' Amended Complaint "specifically aver how the Defendants functioned as an enterprise colluding to carry out fraudulent schemes". *Id.*, *3. As Schuylkill County Defendants state, "The requirement that payment be made for delinquent taxes only by certified checks, cashier checks or money orders not only does not constitute racketeering but also fails to state a claim for deprivation of a constitutional rights." (*Id.*, p. 16). We find that Plaintiffs have wholly failed to state how the alleged wrongdoing by Schuylkill County Defendants amounts to any of the enumerated racketeering activities. Thus, we will recommend that, insofar as Plaintiffs are deemed as raising Civil RICO claims against Schuylkill County Defendants, they be dismissed

with prejudice.   *See Coleman v. Com. Land Title Ins. Co.*, 684 F.Supp.2d 595 (E.D. Pa. 2010).

### E.  Plaintiffs' Damages Claims

As stated, for relief in Parts One and Two, Plaintiffs seek compensatory damages from all Defendants Schuylkill County and Defendant PA #17 as well as punitive damages [23] from all seven of the Schuylkill County Defendants and Defendant PA #17.[24]

As Schuylkill County Defendants state (Doc. 57, p. 10), to the extent that Plaintiffs are deemed as suing the seven County individual Defendants in their official capacities as employees of the SCTCB, *i.e.* alleging that these Defendants were acting within the scope of their duties with SCTCB, we agree with Defendants and find that Plaintiffs' damages claim against them in their official capacities should be dismissed.   *See Carlton, supra* * 8 ("actions against government employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent'") (citation omitted); *Douris v. Schweiker*, 229 F.Supp2d 391, 400 (E.D. Pa. 2002); *Dill v. Com. of PA,* 3F.Supp.2d 583, 587 (E.D. Pa. 1998). Plaintiffs' claims against the individual Defendant employees of the SCTCB under § 1983 in their

---

[23]Plaintiffs cannot seek punitive damages as against Defendant SCTCB.  *See Carlton v. City of Phila.*, 2004 WL 633279 *2 (E.D. Pa.).  Also, Plaintiffs cannot seek punitive damages against the individual Schuylkill County Defendants in their official capacities.  *See Atwell v. Schweiker*, 274 Fed. Appx. 116 (3d cir. 2007)(Non-Precedential).

Also, all of Plaintiffs' claims for punitive damages against Defendant PA #17 in this § 1983 action are prohibited by the Eleventh Amendment.   *See Walker v. Beard*, 244 Fed.Appx. 439, 440 (3d Cir. 2007).

[24]It is not clear from their requests for relief as against the individual Schuylkill County Defendants in their Parts One and Two if Plaintiffs seek damages against them in their personal or official capacity.  However, since Plaintiffs seek punitive damages, we construe Plaintiffs as suing these Defendants in their personal capacities.

official capacities are, in effect, suits against the Defendant SCTCB.  Since SCTCB has been named as a Defendant herein, we see no need for official capacity claims against the seven individual Schuylkill County Defendants.  *See Kenny v. Whitpain Twp.*, 1996 WL 445352 *2 (E.D. Pa.).

We also agree with Schuylkill County Defendants that Plaintiffs' claims for punitive damages against all seven of these County Defendants should be dismissed.  (Doc. 57, pp. 16-17).  As the Court has noted above, Plaintiffs cannot recover punitive damages against Defendant SCTCB in this case on their § 1983 claims.[25]

As the Court stated in *Patel v. Himalayan Intern. Inst. of Yoga Science and Phil.*, 1999 WL 33747891 (M.D. Pa.), punitive damages are intended to punish and deter.  In *Coleman v. Kaye*, 87 F. 3d 1491, 1497 (3d Cir. 1996), the Third Circuit held:

> punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

---

[25]Plaintiffs are statutorily precluded from recovering punitive damages against local governmental agencies like SCTCB, but not against the individual Defendants.  The Supreme Court has determined that, absent a statute to the contrary,  punitive damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748 (1981).  However, this preclusion of a punitive damages remedy does not apply to the  individual defendants. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625 (1983). In *Smith*, the Court held that punitive damages may be recovered from individual defendants in certain §1983 cases.

Further, in *Brennan v. Twp. of Teaneck*, 350 F. 3d 399, 429-430 (3d Cir. 2003), the Court held that retaliatory motive may be insufficient alone in § 1983 retaliation action to satisfy the award of punitive damages. The *Brennan* Court stated that "it is clear under the Court's holding in *Smith v. Wade* that punitive damages require more than the retaliatory motive itself." *Id.*

In *Pribula v. Wyoming Area School Dist.*, 599 F.Supp.2d 564, 580 (M.D. Pa. 2009), the Court stated that "[p]unitve damages may be awarded in a case brought pursuant to 42 U.S.C. § 1983 'when the Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" (citation omitted).

We agree with Schuylkill County Defendants that "Plaintiffs' allegations as to the Tax Claim Bureau's refusal to accept personal checks or certified bank checks, does not, as a matter of law, constitute outrageous conduct thereby mandating that the claim for punitive damages and exemplary damages be dismissed." (Doc. 57, p. 17). Plaintiffs' allegations clearly fail to amount to reckless conduct sufficient to support a punitive damages award against the Schuylkill County Defendants.

Therefore, we will recommend that Plaintiffs' claims for punitive damages against all Schuylkill County Defendants be dismissed.

> F.     *Plaintiffs' Claims under the Pennsylvania Constitution and Pennsylvania State Law Claims*

As stated above, Plaintiffs state that the alleged conduct by the Schuylkill County Defendants violated the Pennsylvania Constitution as well as Pennsylvania law. Plaintiffs cannot seek money damages from any Defendant under the Pennsylvania Constitution. Thus, to the

extent that Plaintiff seeks money damages from all Defendants under the Pennsylvania Constitution, it well-settled that they have no private right of action under the Pennsylvania Constitution for money damages. Therefore, insofar as Plaintiffs are attempting to raise claims under the Pennsylvania Constitution for damages, we will recommend that they all be dismissed as against all Defendants named in the Amended Complaint.[26]

In *Bowers v. City of Phila.*, 2008 WL 5210256, *8 (E. D. Pa.), the Court stated:

> "To date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Dillon v. Homeowner's Select*, 957 A.2d 772, 780 n. 11 (Pa. Super. Ct. 2008) (*quoting Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006), *appeal denied*, 589 Pa. 741, 909 A.2d 1291 (Pa. 2006)). Accordingly, we agree with Defendants' undisputed assertion that Plaintiff's claims for damages under the Pennsylvania Constitution fail as a matter of law. *See Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 WL 4889023, at * 10 (E.D. Pa. Nov. 12, 2008) (holding that "there is no private cause of action for damages arising from violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution") (citations omitted); *Alvarez v. City of Phila.*, No. 07-0493, 2008 WL 4347529, at * 13 (E.D. Pa. Sept. 23, 2008) (granting summary judgment in favor of defendant since "Pennsylvania does not recognize a private right of action for monetary damages for violation fo the Pennsylvania Constitution"); *Douris v. Schweiker*, 229 F.Supp.2d 391, 405 (E.D. Pa. 2002) (explaining that although Pennsylvania courts have not yet addressed the issue, federal courts have consistently held that no private cause of action for damages is available under the Pennsylvania Constitution); *Kelleher v. City of Reading*, No. 01-3386, 2001 WL 1132401, at * 3 (E.D. Pa. Sept. 24,

---

[26]Since we recommend that Plaintiffs' claims for damages under the Pennsylvania Constitution be dismissed against all Defendants, we do not repeat the recommendation with respect to all of the other R&R's which will be filed in this case regarding the remaining Motions to Dismiss.

2001) (noting that "the federal courts in this Circuit . . . have concluded that there is no such private cause of action for damages under the Pennsylvania Constitution," and citing cases); *Pendrell v. Chatham Coll.*, 386 F. Supp. 341, 344 (W.D. Pa. 1974) (rejecting Pennsylvania constitutional claim for damages and noting that plaintiff could cite no authority that implies such a cause of action).

Thus, claims for damages that Plaintiffs are seeking under the Pennsylvania Constitution against all Defendants in the Amended Complaint should be dismissed as a matter of law. *See Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327 and note 13 (M.D. Pa.)("Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which provides a private right of action for a federal constitutional violation.")(citations omitted); *Brandt v. Borough of Palmyra*, Civil No. 08-0677, M.D. Pa.; *Maynard v. ENT Surgical Assoc.*, Civil No. 09-1993, M.D. Pa. (1-26-10 Memorandum).

Finally, since we do not find that Plaintiffs have not stated any viable constitutional claim against the Schuylkill County Defendants, we agree with Defendants (Doc. 57, p. 18) that the Court should decline to exercise its pendent jurisdiction over any state law claim that Plaintiffs may be asserting against them. *See E.E.O.C. v. Creative Playthings, Ltd.*, 375 F. Supp. 2d 427, 432-33 (E. D. Pa. 2005); *Jacobowitz, supra*. Also, as Schuylkill County Defendants state (*Id.*), none of Plaintiffs' claims against them fall within any of the exceptions to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §8541. *See Pelzer v. City of Phila.*, 656 F. Supp. 2d 517, 538-39 (E.D. Pa.)("The PSCTA provides legal immunity for government bodies and their employees unless their actions fall within certain enumerated exceptions.").

Accordingly, we will recommend that the Motion to Dismiss of Schuylkill County Defendants (Doc. 56) be granted and that all Plaintiffs' claims against these seven Defendants,

namely, Schuylkill County Tax Claim Bureau, Mantura M. Gallagher, Robert S. Frycklund, Shelly K. Morrison, Russell T. Motsko, Pamela, and Denise McGinley-Gerchak, be dismissed with prejudice.

   3.   *Motion to Dismiss of Defendant #17 State of Pennsylvania through Attorney General (Doc. 69)*

      A.   *Plaintiffs' Claims against Defendant State of Pennsylvania through Attorney General*

We now consider the Motion to Dismiss of PA Defendant #17 (Doc. 69). As stated, Plaintiffs name Pennsylvania as a Defendant "through Attorney General." (Doc. 53, p. 1, #17). PA Defendant #17 is mentioned in Plaintiffs' Amended Complaint Part One, Part Two, Part Three, Part Four, Part Five, and Part Six. Plaintiffs seeks monetary damages as well as declaratory relief as against PA Defendant #17. Plaintiffs request this Court to declare any state law that does not allow the payment of real estate taxes by personal checks to be invalid.

PA Defendant #17 argues that with respect to Plaintiffs' Part One and Part Two, and their allegations discussed in detail above concerning the refusal of Schuylkill County Defendants from allowing them to pay their delinquent real estate tax by personal checks, "there are no Federal or State Constitutional provisions which give citizens the right to pay their delinquent taxes by personal checks." (Doc. 71, p. 5). PA Defendant #17 also argues that "there are no specific allegations that any Commonwealth administrative agencies (or Commonwealth employees acting under color of state law) did anything relative to Plaintiffs['] attempts to pay their delinquent taxes." (*Id*.). PA Defendant #17 contends that Parts One and Two of Plaintiffs' Amended Complaint as against it should be summarily dismissed.

Plaintiffs argue with respect to their claims in Part One and Part Two that they "state a fact that legal tenders (cashier checks) were not accepted and it this was done under any [Pennsylvania] law that law should be declared unconstitutional." (Doc. 105, p. 3, ¶ 7.). Plaintiffs also state, with respect to all of their claims against PA Defendant #17, that they "have unequivocally stated that all the actions (facts) were done under someway delegated powers of the state (under color of law) by respective culprits, and state had prime fiduciary duty to protect citizens from misuse of its delegated powers." (*Id.*, ¶ 10.). Plaintiffs seem to contend that since PA Defendant #17 failed to protect them from the alleged unlawful acts of the other Defendants, who acted under color of state law, and failed to prevent the abuse of the powers which Pennsylvania delegated to the other Defendants, Pennsylvania is liable to them in this civil rights action.

If Plaintiffs' unfounded logic for naming Pennsylvania as a Defendant in this case were accepted, Pennsylvania could be named as a Defendant in virtually every § 1983 case since such a case requires an allegation that a person acting under c olor of state law violated a constitutional right. In fact, Plaintiffs state in their brief that the "State should be definitely a proforma-party in all the actions from and by the parties using states delegated powers." (*Id.*, ¶ 13.). Thus, it appears that Plaintiffs have named PA Defendant #17 in their Parts One and Two since they are challenging the policy of Defendant SCTCB not to accept personal checks to pay their delinquent real estate taxes, and since they allege that Pennsylvania delegated the power to Schuylkill County to collect property taxes and Pennsylvania failed to protect them against Schuylkill County's alleged unlawful policy.

With respect to Parts Three and Four, Plaintiffs allege that Defendant Kline Township Municipal Authority ("KTMA") failed to turn off the water to their property located in Kelayres, Pennsylvania, after they requested it be turned off in December 2008 or January 2009. (Doc. 53, p. 5). Plaintiffs aver that after their request, they (Plaintiffs) shut off the water in the basement of their property but Defendant KTMA still had not shut off the main water at the meter. Plaintiffs allege that at a later time, seemingly one of their tenants at the property turned on the water and the pipe froze and burst, causing damage to their property. Plaintiffs state that "the negligence of [Defendants #11, 12, 13, 14, 15 and 16 (Kline Twp. Defendants)] [by] not turning off water as requested, resulted in property damage." (*Id.*, pp. 5-6). Plaintiffs aver that they notified Kline Township Police about the incident, and that on March 23, 2009, they filed a notice of claim about the incident with Defendants #11, 12, 13, 14, 15 and 16. Plaintiffs aver that subsequently, they received from Defendant #14 KTMA a "Notice of Intent to impose Municipal lien" on their property. Plaintiffs detail the alleged actual loss they suffered as a result of the pipe bursting in their property. Plaintiffs state that they sent a letter to Defendant KTMA on March 3, 2009, requesting that it turn back on the water to their property and that did have not receive a reply to their letter. (*Id.*, p. 6, Ex. 3E).

As relief in Part Three, Plaintiffs seek compensatory and punitive damages as well as declaratory relief from Defendants #11, 12, 13, 14, 15 and 16 (Kline Twp. Defendants), and from Defendants #1, 2, 3, 4, 5, 6 and 7 (Schuylkill County Defendants) and PA Defendant #17. Plaintiffs state as follows regarding their request for damages:

> 84.    That demand award of damages from defendants # 1, 2, 3,
>         4, 5, 6, 7, 11, 12, 13, 14, 15, 16 and 17 jointly and severally

> for wrongs in relation to not shutting off the water connection, generating correct bill, knowingly falsely filling lean (sic) on the property, after filling lean (sic) still billing Dr. Agarwal same amount twice, Paul Datte Esq. giving wrong advice although getting paid by taxpayers funds (giving rise to malpractice claim) and etc. etc., in amount of 45,000,001 along with punitive and exemplary damages to be decided by JURY and approved by the Court.

(*Id.*, p. 6, ¶ 84.).

Plaintiffs also state that their alleged conduct by the Kline Twp. Defendants "amounts to malicious prosecution jointly and severally by Defendants #1, 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, and 17 … ." (*Id.*, p. 7, ¶ 92.).

As discussed above, insofar as Plaintiffs name the seven Schuylkill County Defendants in their request for relief in Part Three, these Defendants clearly did not have any personal involvement with the water shut off claims alleged in Part Three and this cause of action should be dismissed against them. *See Innis v. Wilson*, 2009 WL 1608502, * 2 (3d Cir. 2009).

In Part Four, Plaintiffs again raise allegations about the failure of Kline Twp. Defendants, along with Defendants #18, 19, 20 (namely Hazleton City Authority Water Department, Hazel Township through Supervisors, and Hazel Township Supervisor) and PA Defendant #17, to properly adhere to their directions to shut off and turn on the water to their properties. Plaintiffs also challenged the billing of the water authorities, allege they created false bills, and Plaintiffs challenge the authorities' attempts to collect water bills. Plaintiffs allege that Defendants #18, 19, 20 and 17 took part in a conspiracy to cause them harm. (*Id.*, pp. 7-8).

In Part Five, Plaintiffs allege that their due process rights were violated since PA Defendant and the Schuylkill County Defendants allowed Defendant HASD #9 to tax their properties in

Schuylkill County. Plaintiffs also allege discrimination by PA Defendant, Schuylkill County and Luzerne County since they allow taxing authorities to tax in and out of county properties differently. (*Id.*, p. 8). Plaintiffs also allege that the stated Defendants allowed Defendant HASD #9 to file a tax lien against their property without notice. (*Id.*, p. 10).

In Part Six, Plaintiffs allege that Plaintiff Dr. Agarwal "was not allowed to peacefully ask questions and was threatened by Sheriff Department in the [Schuylkill County Courthouse]" and that Dr. Agarwal's access to the courthouse was blocked on several occasions by officers of the sheriff Department. (*Id.*). Plaintiffs also aver that Dr. Agarwal was not allowed to file a "Caveat" with the Prothonotary in the courthouse and that the "Caveat" he tried to file by mail was returned by the Court Administrator's Office. Plaintiffs implicate Defendants #21, 22, 23, 24, 25 and 26 in Part Six as well as PA Defendant #17. Plaintiffs state that PA Defendant is named since Defendants #21, 22, 23, 24, 25 and 26 were in "some way using Defendant #17 powers" and hence Defendant #17 had a fiduciary and vicarious responsibility to them to make sure Defendants #21, 22, 23, 24, 25 and 26 used the powers Pennsylvania delegated to them properly. (*Id.*, p. 11).

We agree with PA Defendant #17 that Plaintiffs' Amended Complaint fails to state any cognizable constitutional claim against it in any of its Parts, *i.e.* causes of action. Neither Pennsylvania nor any of its agents were directly involved with any of Plaintiffs' claims. As PA Defendant states, "Plaintiffs' amended Complaint is simply devoid of any facts concerning the Commonwealth, or Commonwealth Agents, which would allow them to recover based on any cognizable legal theory." (Doc. 71, pp. 6-7). Also, to the extent Plaintiffs seek compensatory

and punitive damages against PA Defendant, such requests for relief are barred by the Eleventh Amendment in this § 1983 action. *See Walker v. Beard, supra.*

In *Ford v. Pennsylvania*, 2008 WL 4132330, *3-*4 (M.D. Pa.), the Court stated:

> Absent an exception, the Eleventh Amendment bars suits in federal court that name the state as a defendant. [FN3]. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). This bar "extends to suits against departments or agencies of the state having no existence apart from the state." *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981). The primary purpose of the Eleventh Amendment is "to assure the federal courts do not interfere with a state's public policy and its administration of internal public affairs." *Blake v. Kline,* 612 F.2d 718, 725 (3d Cir.1979).
>
> > FN3. Although the Eleventh Amendment appears to apply only to suits brought by a citizen of one state against another state, it also protects a state against suits brought by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890).
>
> There are only three "narrowly circumscribed exceptions" to the Eleventh Amendment immunity: (1) congressional abrogation, (2) state waiver, and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law. *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark,* 344 F.3d 335, 344-45 (3d Cir.2003). As discussed below, all counts against the Commonwealth Defendants must be dismissed because neither the first nor second exception applies in the instant case.
>
> The first exception does not apply in the instant case because Congress has not abrogated Eleventh Amendment immunity to suits brought under 42 U.S.C. §§ 1981 and 1983. Congress did not intend to abrogate the states' Eleventh Amendment immunity by enacting 42 U .S.C. §§ 1981 and 1983. *See Quern v. Jordon,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("[N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels, or even warrants, a leap from this proposition to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States."); *Laskaris,* 661 F.2d at 25 (noting that the Eleventh Amendment "bars a civil rights suit in federal court that names the state as a defendant, even a claim seeking injunctive relief").

> The second exception is equally inapplicable. Although a state may consent
> to suit thereby waiving Eleventh Amendment immunity, *Coll. Sav. Bank v.
> Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670, 119 S.Ct.
> 2219, 144 L.Ed.2d 605 (1999), the Commonwealth of Pennsylvania
> has not generally waived its immunity. 42 Pa. Cons.Stat. Ann. § 8521.
> *See also Petsinger v. Pa. Dep't of Transp.,* 211 F.Supp.2d 610, 613
> (E.D.Pa.2002) ( "The Commonwealth of Pennsylvania has not waived its
> immunity in § 1983 civil rights cases." Absent such consent, the
> Eleventh Amendment provides immunity from civil rights suits in federal
> court. *Laskaris,* 661 F.2d at 25.
>
> Because Congress has not abrogated state immunity in §§ 1981 and 1983
> suits and the Commonwealth has not waived its immunity, the
> Eleventh Amendment bars Plaintiff's claims against the Commonwealth
> of Pennsylvania, SCSC, PennDOT, DPW, DGS, DOC, and L & I. Accordingly,
> the court grants Defendants' motion to dismiss with regard to these
> defendants.

*See also Democracy Rising PA v. Celluci*, 603 F.Supp.2d 780, 795 (M.D. Pa. 2009).

In the instant case, Plaintiffs have named Pennsylvania as a Defendant based on its alleged failure to monitor the use of the powers it delegated to the other local government Defendants and their employees, and based on its alleged allowance of these local governmental units to have unlawful policies and practices, such as in the collection of delinquent property taxes, in the filing of tax liens and in the shutting off water service. The exceptions to Eleventh Amendment immunity for Pennsylvania do not apply in the present § 1983 case. *Id.*

Therefore, we will recommend that PA Defendant #17's Motion to Dismiss (Doc. 69) be granted and that Pennsylvania be dismissed from this case with prejudice.

## VI. Recommendation.

Based on the above, it is respectfully recommended that the Motion to Dismiss Plaintiffs' Amended Complaint of Defendant #6, "Pamela" **(Doc. 72),** be granted and that Defendant #6, "Pamela," be dismissed entirely with prejudice. It is recommended that Defendant MCR be dismissed pursuant to Rule 4(m). It is also recommended that the Motion to Dismiss Plaintiffs' Amended Complaint of Schuylkill County Defendants **(Doc. 56)**, Defendants #1, 2, 3, 4, 5 and 7, be granted, and that these six Defendants be dismissed entirely with prejudice. Further, it is recommended that the Motion to Dismiss of Defendant #17, PA, **(Doc. 69)** be granted and that Defendant PA be dismissed entirely with prejudice.[27]

---

[27]Pursuant to our above discussion, as well as our prior R&R (Doc. 122), we find futility of any further amendment of Plaintiffs' stated federal claims against the Schuylkill County Defendants and Defendant Pennsylvania, and we shall not recommend Plaintiffs be granted leave to once again amend their pleading with respect to these claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Jacobowitz, supra*.

As the Court stated in *Conway v. King Pharmaceuticals, Inc*., 2008 WL 4128088, *2 (M.D. Pa.):

> *Pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. *Alston,* 363 F.3d at 235; *see, e.g., Gurreri v. Adams County Prison,* Civil No. 3:CV-07-2198, 2008 WL 170599, at *2 (M.D.Pa. Jan.17, 2008) (affording the plaintiff an opportunity to amend his complaint after inappropriately naming the county prison as a defendant). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recovery is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002).

Finally, it is recommended that Plaintiffs' claims for damages under the Pennsylvania Constitution against all Defendants in this case be dismissed with prejudice.



**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:   July 27, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MADHU AGARWAL and          :
DR. ANIL AGARWAL,          :          CIVIL ACTION NO. **3:CV-09-1921**
                           :
          Plaintiffs       :          (Judge Caputo)
                           :
          v.               :          (Magistrate Judge Blewitt)
                           :
SCHUYLKILL COUNTY TAX CLAIM :
BUREAU, et al.,            :
                           :
                           :
          Defendants       :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 27, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
_____        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**


**Dated: July 27, 2010**